IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STOLLE MACHINERY COMPANY,
LLC,

         Plaintiff,

         vs.

RAM PRECISION INDUSTRIES,
et al.,

         Defendants.

:
:
:
:
:
:
:

Case No. 3:10-cv-155

JUDGE WALTER HERBERT RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANTS SHU AN AND SUZHOU SLAC PRECISION
EQUIPMENT CO. LTD.'S MOTION TO DISMISS (DOC. #14);
DISMISSING COUNTS VII AND IX WITH PREJUDICE; CONFERENCE
CALL SET

---

On April 22, 2010, Plaintiff Stolle Machinery Company ("Stolle") filed suit

against RAM Precision Industries, Kenneth Fultz, Shu An ("An"), and Suzhou SLAC

Precision Equipment Co., Ltd. ("SLAC"), alleging copyright infringement,

misappropriation of trade secrets, conspiracy to misappropriate trade secrets,

breach of contract, tortious interference with prospective business relations, unfair

competition, deceptive trade practices, and conversion.  Plaintiff seeks damages

and injunctive relief.

This matter is currently before the Court on Defendants An and SLAC's

Motion to Dismiss.  Doc. #14.  They argue that the Court lacks personal

jurisdiction over them. In the alternative, they argue that Plaintiff has failed to state a claim upon which relief can be granted.

## I.    Factual Background

Stolle is an industrial and manufacturing company, incorporated under the laws of Delaware and headquartered in Colorado. Compl. ¶1. It specializes in the construction, sale and maintenance of industrial machining equipment used to design, manufacture and assemble cans to store food and beverage products. Stolle sells its equipment to customers around the world. Id. at ¶10. One of Stolle's specialties is "easy open ends," the tabbed "pop tops" that are commonly found on cans for carbonated beverages and other products. Stolle maintains its End and Metal Forming Division in Sidney, Ohio. Approximately 30-50% of Stolle's revenue comes from the operation of its Sidney facility, which employs between 100 and 150 workers. Butcher Aff. ¶¶4-5; Ex. 2 to Mem. in Opp'n to Mot. to Dismiss.

Stolle takes various measures to protect its trade secrets and technical know-how from infringement by competing businesses. For example, it requires employees to sign non-disclosure agreements, restricts disclosure of proprietary, trade secret, and confidential information to employees and managers on a "need to know" basis, and requires employees leaving the company to return all information collected in the course of their employment. Compl. ¶¶13-14.

Defendant Shu An is a former Stolle employee who supervised mechanical engineers at the Sidney facility from 1993-2003. Id. at ¶51. An is a dual citizen of China and the United States. Id. at ¶5. In July 2002, An was advised that he would most likely be terminated in the near future due to poor performance.

According to Plaintiff, An thereafter began collecting and stealing a number of Stolle's tooling drawings, designs and blueprints, as well as vendor information. An allegedly continued to amass these materials until he was terminated in January of 2003. Id. at ¶¶52-53.

An then returned to China where he almost immediately founded SLAC, a Chinese company which, like Stolle, manufactures machining equipment for food and beverage cans and specializes in "easy open ends" manufacturing technology. An currently serves as SLAC's chief executive officer. Plaintiff alleges that An used the knowledge, technical drawings and blueprints that he misappropriated to secure financing, and used misappropriated vendor information to get parts to build copycat machinery which SLAC now sells to customers around the world. Id. at ¶¶54–60.

Defendant Ken Fultz is also a former Stolle employee who served as a Customer Service Manager and had access to Stolle's proprietary, trade secret, and confidential business information. Id. at ¶¶15-16. After leaving Stolle in 2009, he was hired by Defendant RAM, an Ohio-based company that served as Stolle's tooling supplier for a number of years. Id. at ¶¶31-32.

Plaintiff alleges that beginning in January of 2010, An and SLAC conspired with Fultz and RAM to consolidate trade secrets, proprietary drawings, client lists, and other confidential business information they collected from Stolle. Id. at ¶62. Plaintiff further alleges that An and Fultz have traveled to China and Thailand together to solicit Stolle's customers, and to sell them spare parts, complete dies, and other equipment that was manufactured using misappropriated trade secrets. Id. at ¶ 63.

On November 22, 2010, Plaintiff settled all claims with RAM and Fultz, Doc. #27, leaving An and SLAC as the only remaining defendants. An and SLAC have moved to dismiss Plaintiff's Complaint on grounds of lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In the alternative, they argue that dismissal is warranted under Rule 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted. The Court turns first to the question of personal jurisdiction.

## II.  Personal Jurisdiction

### A.  Relevant Law

Once confronted with a 12(b)(2) motion, the plaintiff must demonstrate the existence of personal jurisdiction over the defendant. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). Where, as here, the district court relies solely on written submissions and affidavits to resolve the motion, before discovery and without an evidentiary hearing, the plaintiff's burden is "relatively slight." He need only make a prima facie showing of personal jurisdiction. Air Prods. & Controls, Inc. v. SafeTech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007). The prima facie burden is met if the "plaintiff has set forth specific facts that support a finding of jurisdiction." Kroger Co. v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006). The pleadings and affidavits must be construed in the light most favorable to the plaintiff, and the countervailing claims of the defendant disregarded. Bridgeport Music, Inc. v. Still N The Water Publ'g, 327 F.3d 472, 478 (6th Cir. 2003).

An exercise of personal jurisdiction over an out-of-state defendant must offend neither the forum state's long-arm statute nor the due process protections

of the Fourteenth Amendment to the United States Constitution. These inquires are distinct since Ohio's long-arm statute, set forth in Ohio Revised Code § 2307.382(A), is not coterminous with the constitutional due process limitations on jurisdiction. See Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998) (citing Goldstein v. Christiansen, 70 Ohio St. 3d 232, 638 N.E.2d 541 (Ohio 1994)).

### 1. Ohio's Long-arm Statute

Ohio's long-arm statute provides, in relevant part, as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
* * *
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state . . .

Ohio Rev. Code § 2307.382(A).

### 2. Constitutional Due Process Considerations

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). The relevant question is whether the out-of-state defendant

- 5 -

purposefully established enough "minimum contacts" in the forum state that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316.

Personal jurisdiction may be either general or specific. General jurisdiction is appropriate where the "defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989).

In contrast, specific jurisdiction may be exercised "in a suit arising out of or related to the defendant's contacts with the forum." Id. The Sixth Circuit employs a three part test for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

### B. Personal Jurisdiction Over An

#### 1. Long-arm Statute

Construing the Complaint in the light most favorable to Plaintiff, the Court finds that it can properly exercise personal jurisdiction over An pursuant to Ohio's long-arm statute. Plaintiff has alleged that An, while still working at Stolle's

- 6 -

Sidney, Ohio facility, violated copyright laws by reproducing copyrighted design drawings without Stolle's permission, and misappropriated engineering documents, design drawings, and customer and vendor information. Compl. ¶¶53, 70, 133. This brings him within the jurisdictional ambit of Ohio Revised Code § 2307.382 (A)(3), because he allegedly caused a tortious injury by an act in Ohio.

Plaintiff further alleges that once An moved back to China, he used that proprietary information to establish his own company, SLAC, in order to directly compete with Stolle. Compl. ¶¶54, 59. In addition, Plaintiff alleges that An conspired with Fultz and RAM to misappropriate trade secrets in order to compete with Stolle, and that they intentionally interfered with prospective business relations. Compl. ¶¶62-64, 115. These allegations bring An within the jurisdictional ambit of Ohio Revised Code § 2307.382(A)(6), given that he allegedly caused a tortious injury in Ohio by an act outside of Ohio committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

### 2. Constitutional Due Process

The Court must next consider whether the exercise of personal jurisdiction over An comports with due process considerations. The Court starts by examining whether specific jurisdiction exists.

### a. Purposeful Availment

The first question is whether An purposefully availed himself of the privilege of acting in Ohio or causing a consequence here. <u>Southern Mach.</u>, 401 F.3d at

381. The "purposeful availment" requirement ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475 (internal citations omitted).

In arguing that purposeful availment is lacking, An focuses almost exclusively on his lack of contacts with Ohio in the present day, asserting that, having moved to China, he no longer maintains any personal residence, bank account, or business relationships in the state. However, it is axiomatic that, in assessing a defendant's relationship with a given forum, the Court must evaluate the defendant's contacts at the time of the alleged wrongdoing. Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987) ("courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute."). Otherwise, a defendant could "defeat personal jurisdiction by a move away from the state in which the underlying events took place." Id. Accordingly, the fact that An now lives in China, rather than Ohio, is irrelevant to the purposeful availment issue.

From 1993 until 2003, An lived and worked in Ohio while he was employed by Stolle. Plaintiff alleges that in 2002, after An learned he would be terminated, An stole many trade secrets, copyrighted drawings, and confidential information from Stolle. These acts were committed in Ohio and gave rise to Plaintiff's claims. These allegations are sufficient, for purposes of a prima facie case, to support a

- 8 -

finding that An purposefully availed himself of the privilege of acting in Ohio or causing a consequence here.

### b.    Arising From Contacts Within Ohio

The second factor in the <u>Southern Machine</u> test requires that a plaintiff's cause of action "arise from" the defendant's contacts within the forum state. 401 F.3d at 381. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." <u>CompuServe, Inc. v. Patterson</u>, 89 F.3d 1257, 1267 (6th Cir. 1996). The Sixth Circuit has noted that this is a "lenient standard." <u>Bird v. Parsons</u>, 289 F.3d 865, 875 (6th Cir. 2002). A cause of action arises from the defendant's contacts in the forum state when it is "made possible by" him or "lie[s] in [his] wake." <u>Air Prods. & Controls, Inc.</u>, 503 F.3d at 553.

Plaintiff's causes of action clearly arise from An's activities in Ohio. They arise from An's alleged theft of trade secrets and copyrighted materials while he was employed at Stolle in Ohio. Of course, Plaintiff's Complaint also includes conduct that occurred outside Ohio and the United States. However, the existence of these non-forum activities does not negate the fact that each cause of action flows from An's previous employment relationship with Stolle in Ohio. The "arising out of" requirement is thus satisfied.

### c.    Reasonableness

Finally, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the

exercise of jurisdiction over the defendant reasonable." <u>Southern Mach.</u>, 401 F.2d at 381. Where the first two criteria of the <u>Southern Machine</u> test are satisfied, a presumption of reasonableness arises, and "only the unusual case will not meet this third criterion." <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1461 (6th Cir. 1991).

The Sixth Circuit has indicated that, when considering the reasonableness of personal jurisdiction, a district court should look to the following, non-exclusive, list of factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." <u>Intera Corp. v. Henderson</u>, 428 F.3d 605, 618 (6th Cir. 2005).

Undoubtedly, the burden imposed on An by litigating in Ohio would be high, and the Court must weigh that hardship in its analysis. Beyond the hardship factor, though, the only issue An addresses in any depth is the interest of the forum state, arguing that Ohio "has virtually no interest in this dispute," because Stolle is a Delaware corporation with its principal place of business in Colorado. Doc. #14, at 12. The Court finds this reasoning unpersuasive.

As indicated in the Butcher affidavit, Stolle has maintained a facility in Sidney, Ohio for 38 years, and that facility employs over 100 people and contributes significantly to Stolle's bottom line, generating 30-50% of its yearly revenue. Stolle also pays taxes to the State of Ohio. Butcher Aff. ¶¶4-5. Ohio has a substantial interest in protecting companies that conduct significant business

within its borders, regardless of where they are officially headquartered. Furthermore, if Defendants' conduct has harmed sales of Stolle's machines that are manufactured at the Sidney facility, Butcher Aff. ¶11, Ohio employees will also suffer.  The fact that defending a lawsuit in a foreign jurisdiction may impose a hardship on a defendant does not by itself demonstrate that an exercise of jurisdiction is unreasonable, especially where the forum state has a significant interest in the litigation.  Bird, 289 F.3d at 875-76.

The Court also considers the fact that the alleged co-conspirators, Defendants Fultz and RAM, are located in Ohio.  Although Plaintiff has settled its claims against these Defendants, their testimony may still be needed in connection with Plaintiff's claims against An and SLAC.  Finally, it does not appear that any other state has a more significant interest in resolving this dispute.

Considering all of these factors, the Court concludes that it is reasonable to exercise personal jurisdiction over An.  The Court is not indifferent to the hardships associated with requiring An to litigate in Ohio, but "this interest does not override the other factors suggesting that personal jurisdiction is Ohio is reasonable."  Id. at 876.

In summary, the Court finds that An is subject to Ohio's long-arm statute, and that the Court can exercise specific personal jurisdiction over An consistent

with due process requirements.[1]  Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is OVERRULED as to Defendant An.

### C.    Personal Jurisdiction Over SLAC

The Court must next consider whether it can also exercise personal jurisdiction over SLAC, the Chinese company established by An.  Although the parties have lumped together the questions of whether the Court has personal jurisdiction over An and SLAC, "[e]ach defendant's contacts with the forum State must be assessed individually."  Calder v. Jones, 465 U.S. 783, 790 (1984).

### 1.    Long-arm Statute

SLAC is not registered to do business in Ohio, does not own or lease property in Ohio, maintains no offices in Ohio, has no bank accounts or employees in Ohio, has no agent for service of process in Ohio, and does not advertise in Ohio.  It has never sold any products in Ohio.  Since 2004, it has made approximately eight purchases from three or four Ohio companies, but those purchases are unrelated to Plaintiff's claims.  An Decl. ¶¶7-8.  Although SLAC has a website through which customers can submit a message to the company, its products cannot be purchased over the Internet.  An Decl. ¶10.

Defendants maintain that, under these circumstances, SLAC cannot be found to have "transacted business" in Ohio for purposes of Ohio Revised Code §

---

[1]  Plaintiff has also presented some evidence indicating that An might currently own or rent property in Ohio, maintain an Ohio bank account, or be registered to vote in the state.  An denies these allegations.  These disputed facts are irrelevant to the Court's determination that specific personal jurisdiction exists.

2307.382(A)(1). See Ohio Rev. Code § 2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.").

The Court tends to agree. However, regardless of whether SLAC has "transacted business" in Ohio, the long-arm statute applies because, viewing the allegations in the Complaint in a light most favorable to Plaintiff, SLAC, acting directly or through an agent, has caused "tortious injury in this state . . . by an act outside this state committed with the purpose of injuring persons, when [it] might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.383(A)(6).

Plaintiff alleges that SLAC, acting in concert with An, Fultz and RAM, conspired to consolidate Stolle's trade secrets, client lists and other proprietary information in order to directly compete with Stolle. Compl. ¶ 62-63, 94. Plaintiff also alleges that SLAC has infringed Stolle's copyrights by using Stolle's designs, intentionally interfered with Stolle's prospective business relationships, and committed deceptive trade practices in passing off Stolle's proprietary information as its own. Compl. ¶ 73, 115, 126. Accepting these allegations as true, it can be inferred that SLAC intended to injure Stolle and should have reasonably expected that its conduct would cause Stolle to be injured in Ohio, where a substantial portion of Stolle's revenue originates and where it employs 100-150 persons. Butcher Aff. ¶¶ 4-5. The Court therefore finds that SLAC falls within the reach of Ohio's long-arm statute.

### 2. Constitutional Due Process

The Court must next consider whether the exercise of personal jurisdiction over SLAC comports with due process considerations. Again, the Court starts by examining whether it can exercise specific jurisdiction over SLAC.

Defendants maintain that the exercise of personal jurisdiction over SLAC would violate due process. SLAC has no substantial connection to Ohio, none of the conduct alleged was committed by SLAC in Ohio, and Stolle is a Delaware corporation with a principal place of business in Colorado.

Plaintiff, however, argues that because An purposely availed himself of the privilege of employment in Ohio, where he knowingly misappropriated information that he used to benefit SLAC, the Court may properly exercise specific jurisdiction over both. According to Plaintiff, SLAC has knowingly exploited that stolen information for its own commercial gain, knowing that this would cause economic loss to Stolle in Ohio. Plaintiff maintains that the consequences of SLAC's conduct have a substantial enough connection to Ohio to make the exercise of personal jurisdiction over SLAC reasonable. The Court agrees.

### a. Purposeful Availment

The first question is whether SLAC has purposely availed itself of the privilege of causing consequences in Ohio such that it should reasonably anticipate being haled into court here.

Plaintiff appears to rely primarily on a "conspiracy theory" of personal jurisdiction, whereby if one co-conspirator commits an overt act in furtherance of

- 14 -

the conspiracy in the forum state, personal jurisdiction extends to all members of the conspiracy. See Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, 410 F. Supp.2d 592, 599 (E.D. Ky. 2006). In order to establish personal jurisdiction in this manner, a plaintiff must allege: "(1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." Id.[2]

Plaintiff does not allege exactly how or where the conspiracy was formed. However, Plaintiff alleges that "at least as early as January 2010," SLAC, together with An, Fultz, and RAM, entered into a conspiracy to consolidate misappropriated trade secrets in an effort to unfairly compete directly with Stolle. Compl. ¶62. Plaintiff argues that because Fultz is an Ohio resident and RAM is an Ohio corporation, their contacts with Ohio may be imputed to SLAC.

The problem is that Plaintiff has failed to allege any overt act taken in Ohio in furtherance of the conspiracy. Plaintiff points to no specific communications that took place between Fultz and An. Plaintiff alleges only that they conspired to consolidate trade secrets and then traveled to China and Thailand together in order to solicit Stolle's customers. Absent any allegations of conduct that occurred in

---

[2] The Sixth Circuit has neither expressly adopted nor rejected the "conspiracy theory" of personal jurisdiction, but has noted that conclusory allegations of a non-resident's part in a conspiracy are insufficient. Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1237 (6th Cir. 1981).

Ohio, the mere fact that the alleged co-conspirators are Ohio residents is insufficient to establish personal jurisdiction over SLAC.

This, however, is not dispositive. The Court agrees with Plaintiff that the consequences of SLAC's conduct have a substantial enough connection to Ohio to justify the exercise of personal jurisdiction over SLAC.

In Calder v. Jones, 465 U.S. 783 (1984), the Supreme Court adopted the "effects test," governing the "purposeful availment" prong in intentional tort cases. It held that a California court had personal jurisdiction over two Florida journalists in a libel action where the intentional conduct was expressly aimed at Shirley Jones, a celebrity living in California, and the journalists knew that the brunt of the injury would be felt there. In order to establish purposeful availment using the "effects test," a plaintiff must show that the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

Plaintiff has alleged that SLAC committed numerous intentional torts, including copyright infringement, conspiracy to misappropriate trade secrets, tortious interference with prospective business relations, unfair competition, deceptive trade practices, and conversion.

Plaintiff has also made a prima facie showing that SLAC's conduct was aimed at Ohio and caused harm that it knew was likely to be suffered in Ohio. An, SLAC's founder, chief executive officer and majority shareholder, allegedly

misappropriated trade secrets while employed at Stolle's End and Metal Forming Division located in Sidney, Ohio, and used that information to establish SLAC, a direct competitor of Stolle's. Although Stolle is a Delaware corporation with a principal place of business in Colorado, 30-50% of its revenue comes from the operation of its End and Metal Forming Division. Moreover, this is the only Stolle facility that designs and manufactures the particular machines whose sales have suffered as a result of Defendants' conduct. Butcher Decl. ¶¶7, 11. Under these circumstances, Ohio must be deemed the focal point of the alleged wrongdoing.

Standing alone, it is not enough that Plaintiff has alleged that SLAC, an out-of-state defendant, committed an intentional tort that injured an Ohio resident. See Air Prods., 503 F.3d at 552.[3] As the Sixth Circuit has interpreted Calder, the out-of-state defendant must also have some other contacts with the forum state. Id. at 553 ("the existence of intentional tortious conduct . . . 'enhances' a party's other contacts with the forum state for purposes of a purposeful availment analysis.").

In this case, An's contacts with Ohio may be imputed to SLAC to provide the requisite connection. An agent's contacts with a forum may be imputed to the principal for purposes of establishing personal jurisdiction. McFadin v. Gerber, 587 F.3d 753, 761 (5th Cir. 2009). Although SLAC did not yet exist when An worked

---

[3] As the court noted in Delta Media Group, Inc. v. Kee Group, Inc., No. 5:07CV01597, 2007 WL 3232432, at *3 (N.D. Ohio Oct. 31, 2007), if injury to a forum resident is deemed to be a sufficient basis for establishing personal jurisdiction, this would render superfluous the "minimum contacts" requirement.

in Ohio and allegedly misappropriated Plaintiff's intellectual property, SLAC has

subsequently *ratified* An's conduct by knowingly using those trade secrets and

other proprietary information for its own financial gain. An's Ohio contacts may,

therefore, be imputed to SLAC. See Daynard v. Ness, Motley, Loadholt,

Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002) ("Whether or not an

agent is initially authorized to act on behalf of a principal, the agent's actions may

be attributed to the principal, for purposes of personal jurisdiction, if the principal

later ratifies the agent's conduct."). By knowingly accepting the benefits of An's

alleged wrongdoing, SLAC is deemed to have ratified An's conduct. Id. at 60. See

also Rees v. Mosaic Tech., Inc., 742 F.2d 765, 768-69 (3d Cir. 1984) (holding

that pre-incorporation acts of a promoter that are subsequently ratified by the

corporation may be considered in the "minimum contacts" analysis).

The case of Thermal Components Company v. Griffith, 98 F. Supp.2d 1224

(D. Kan. 2000) is instructive because it is so factually similar. Four former

employees of Thermal Components, a Kansas corporation, started Thermotech, a

Missouri corporation, to compete with their former employer. The four employees

were residents of Missouri. Thermal Components filed suit in Kansas against the

employees and Thermotech, alleging misappropriation of trade secrets and tortious

interference with Thermal Components' contractual relations and business

expectancies. Defendants moved to dismiss for lack of personal jurisdiction.

The court denied the motion, finding that defendants' conduct fell within the

scope of Kansas's long-arm statute, and that the exercise of personal jurisdiction

over the employees and their new corporation comported with due process. The

court held:

> By misappropriating the trade secrets to which the individual
> defendants became privy only as a result of their employment by the
> plaintiff, and by using that information to interfere with Thermal
> Components' pre-existing and future contractual relations, defendants'
> purposeful tortious conduct toward, as well as the individual
> defendants' previous employment relationship with, a Kansas resident
> establishes the requisite contacts with the forum state.

Id. at 1229. As to the exercise of personal jurisdiction over the newly-formed

corporation, the court held:

> As an entity capitalizing on the knowledge held by plaintiff's former
> employees, defendant Thermotech should have been aware that its
> role in benefitting from the individual defendants' tortious activities
> would harm plaintiff, a Kansas resident, and that the derivation of
> such benefits at plaintiff's expense would require it to defend itself in
> the plaintiff's forum state.

Id. at 1230.

     Likewise, in this case, An was privy to the trade secrets only because of his

previous employment with Stolle in Ohio. He subsequently used that information

to establish SLAC to directly compete with Stolle. SLAC capitalized on An's

misappropriation of Plaintiff's intellectual property, and should have been aware

that using that information at Plaintiff's expense would require it to defend itself in

Ohio.

     For these reasons, the Court finds that Plaintiff has made a prima facie

showing that SLAC has purposely availed itself of the privilege of causing a

consequence in Ohio.

### b. Arising From Contacts Within Ohio

SLAC's contacts with Ohio, as imputed to SLAC through An, are related to the operative facts of Plaintiff's claims, and Plaintiff's claims against SLAC clearly "lie in the wake" of those Ohio contacts. The second prong of the due process analysis is therefore satisfied. Air Prods. & Controls, Inc., 503 F.3d at 553.

### c. Reasonableness

Finally, the Court must determine whether the consequences caused by SLAC have a substantial enough connection with Ohio to make the exercise of personal jurisdiction reasonable. Southern Mach., 401 F.2d at 381. As noted above, when the first two prongs of the test have been met, it is presumed that the exercise of personal jurisdiction is reasonable. Theunissen, 935 F.2d at 1461.

For the reasons discussed above with respect to An, the Court finds that it is reasonable to require SLAC to defend itself against Plaintiff's claims in Ohio. Although the burden imposed on SLAC is high, this factor must be balanced with Ohio's substantial interest in protecting companies that conduct significant business within its borders. Moreover, as previously noted, the alleged co-conspirators are located in Ohio and it does not appear that any other state has a more significant interest in resolving this dispute. Considering all of these factors, the Court concludes that it is reasonable to exercise personal jurisdiction over SLAC.

Plaintiff has made a prima facie showing that this Court has specific personal jurisdiction over SLAC. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is also OVERRULED as to Defendant SLAC.

## III. Failure to State a Claim

In light of the Court's conclusion that has personal jurisdiction over An and SLAC, the Court must now consider Defendants' alternative argument that dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

### A. Applicable Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4I6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

If there is an absence of law to support the type of claim made, or if the facts alleged are insufficient to state a valid claim, or if on the face of the

- 21 -

complaint there is an insurmountable bar to relief, dismissal of the action is proper. Little v. UNUMProvident Corp., 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. See Conley v. Gibson, 355 U.S. 41, 47 (1957); Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1998). A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949-50. The factual allegations must show more than a possibility that the defendant acted unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of 'entitlement to relief.'" Id. at 1949 (quoting Twombly, 550 U.S. at 557).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. See Scheuer, 416 U.S. at 236; Arrow v. Federal Reserve Bank of St. Louis, 358 F.3d 392, 393 (6th Cir. 2004); Mayer, 988 F.2d at 638. The court will indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997). However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Lewis, 135 F.3d at 405.

**B.    Analysis**

Defendants present five separate arguments that address various groupings of Plaintiff's claims for relief: (1) Counts I and IX (copyright infringement and conversion) fail because the statute of limitations has run; (2) Counts I and VI–IX (copyright, tortious interference, unfair competition, deceptive trade practices and conversion) fail because all of the relevant activity occurred outside the United States; (3) Count VII (unfair competition) fails because Plaintiffs have not pled adequate facts; (4) Count III (conspiracy) fails under the intracorporate conspiracy doctrine; and (5) Count X (injunctive relief) fails because none of the underlying substantive claims survive.

### 1. Statute of Limitations (Counts I and IX)

Defendants argue that Plaintiff's copyright infringement and conversion

claims are barred by the statute of limitations.  Liability for copyright infringement

occurs when a defendant violates a right that belongs exclusively to the copyright

owner.  17 U.S.C. § 501(a).  A civil lawsuit for copyright infringement must be

"commenced within three years after the claim accrued."  17 U.S.C. § 507(b).

Such a claim accrues "when a plaintiff knows of the infringement or is chargeable

with such knowledge."  Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376

F.3d 615, 621 (6th Cir. 2004).

Defendants point out that the Complaint alleges that Stolle knew early on

that An had misappropriated trade secret information:

> A mere six months after leaving Stolle's employment [in mid-2003],
> Stolle learned that Shu An was using, without Stolle's authorization,
> certain Stolle trade secret information, technical know-how, and
> stolen proprietary tooling drawings developed and owned by Stolle in
> order to market, manufacture and sell Stolle post-repair, conversion
> equipment, tab, and lane die tooling in China.

Compl. ¶34.  Accordingly, Defendants argue that the statute of limitations has run

as to An's activity in 2003.

However, as Plaintiff correctly notes, a copyright infringement claim can

"accrue more than once because each infringement is a distinct harm."  Roger

Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 390 (6th Cir. 2007).

Thus, "each new infringing act causes a new three year statutory period to begin."

Ritchie v. Williams, 395 F.3d 283, 288 n.5 (6th Cir. 2005).

In their Reply, Defendants argue that Plaintiff has failed to allege facts sufficient to show that additional copyright infringement took place beginning in January 2010. The Court disagrees. Plaintiff alleges that Defendants violated the Copyright Act "by reproducing, distributing, performing, publicly displaying or making derivative works of Stolle's copyrighted Design Drawings without permission from Stolle." Compl. ¶70. In seeking injunctive relief on this claim, Plaintiffs further allege that "Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Stolle irreparable harm . . . " Compl. ¶77. The clear implication is that the infringement is ongoing. Based on these allegations, dismissal of Plaintiff's copyright infringement claim is not warranted on statute of limitations grounds.

Under Ohio law, a conversion claim must be brought within four years of accrual. Ohio Rev. Code § 2305.09(B). The statute of limitations begins to run when "the wrongdoer is discovered." Ohio Rev. Code § 2305.09. An was terminated in mid-2003. Compl. ¶33. As noted above, Plaintiff admits that it knew within six months following the termination that An was using stolen trade secrets and other proprietary information in order to sell equipment in China. Compl. ¶ 34.

The Court rejects Plaintiff's argument that formation of the conspiracy to "convert Stolle's proprietary information" caused the statute of limitations on the conversion claim to begin to run anew. The statute began to run when Plaintiff learned that its personal property had been misappropriated. Unlike copyright infringement, a claim of conversion cannot accrue more than once. Once personal

- 25 -

property has been stolen from its rightful owner, it cannot be misappropriated a second time by the same person.

For the reasons set forth above, the Court OVERRULES Defendants' motion to dismiss Count I (copyright infringement), but SUSTAINS Defendant's motion to dismiss Count IX (conversion) on statute of limitations grounds.

### 2. Conduct Outside the United States

Defendants argue that Counts I (copyright infringement), VI (tortious interference with prospective business relations), VII (unfair competition), VIII (deceptive trade practices), and IX (conversion) must be dismissed because the alleged wrongdoing occurred outside the United States, more specifically, in China and in Thailand.

### a. Copyright Infringement

Defendants note that as a general rule, "infringing actions that take place entirely outside the United States are not actionable" under the Copyright Act. Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1096 (9th Cir. 1994). This makes sense because, for the most part, Congressional legislation is presumed to lack extraterritorial application. Small v. United States, 544 U.S. 385, 388-89 (2005).

According to Defendants, Plaintiff cites only to activity that took place outside of the United States, specifically, in China and Thailand. Compl. ¶¶56-58, 63. Defendants therefore urge the Court to dismiss the claim of copyright infringement. Defendants conveniently ignore Plaintiff's allegation that the initial

collection and unauthorized reproduction of Stolle's drawings and materials took place in Ohio after An was notified of his impending termination.

As the Ninth Circuit has held, when an initial act of infringement occurs within the United States, additional recovery based upon the subsequent and continued infringement abroad is not barred because "the infringing use would have been actionable even if the subsequent foreign distribution that stemmed from that use never took place." Los Angeles News Service v. Reuters Television Int'l, 149 F.3d 987, 991-92 (9th Cir. 1998) (quoting Subafilms, 24 F.3d at 1094). "Recovery of damages arising from overseas infringing uses was allowed because the predicate act of infringement occurring within the United States enabled further reproduction abroad." Id. at 992.

In this case, it was the initial unauthorized copying that occurred in the United States that allowed the subsequent infringement overseas. As to the copyright infringement claim (Count I), the Court therefore OVERRULES Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted.

### b.    Other Claims

Defendants also summarily argue that because the alleged conduct took place outside of the United States, Plaintiff's law claims of tortious interference with prospective business relations, unfair competition, deceptive trade practices, and conversion must also be dismissed. Defendants offer no authority for this argument.

The Court has already determined that it has personal jurisdiction over An and SLAC. Each of the claims cited is based on the premise that An stole proprietary information from Stolle while he worked in Ohio, and later used that information for SLAC's benefit, to compete directly with Stolle. Not only did each of these claims have their genesis in Ohio, but the economic loss attributable to An's conduct was also felt here. The fact that some of the conduct relevant to these claims also occurred overseas is, in the Court's view, largely irrelevant.

Accordingly, Defendants' motion to dismiss Counts VI (tortious interference), VI (unfair competition), and VIII (deceptive trade practices) because the conduct occurred outside of the United States is OVERRULED. Defendants' motion as to Count IX (conversion) is OVERRULED as moot, as the Court has already sustained Defendants' motion to dismiss that claim as time-barred.

### 3. Unfair Competition

Count VII of Plaintiff's Complaint alleges unfair competition under state common law. The Ohio Supreme Court has explained that, "[u]nfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another. The concept of unfair competition may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." Water Management, Inc. v. Stayanchi, 15 Ohio St.3d 83, 85, 472 N.E.2d 715, 717 (Ohio 1984) (internal citations omitted). Defendants maintain that because Plaintiff's Complaint alleges none of these, Plaintiff has failed to state a claim upon which relief can be granted. The Court agrees.

Plaintiff maintains that paragraphs 64 and 65 of the Complaint contain the relevant factual details:

> . . . RAM and Ken Fultz are conspiring with, aiding and abetting Shu An's efforts to profit from the trade secrets, design drawings and proprietary information . . . with the intent to compete directly and unfairly with Stolle in the international marketplace in which Stolle regularly does business.

> . . . Stolle is losing and failing to attract customers . . . because Defendants are interfering with Stolle's existing relationships by representing themselves as being able to offer the same products, quality of workmanship and service as Stolle, when in reality, as described above, all of Defendants' know-how and "innovation" is based entirely upon the misappropriation, use and disclosure of Stolle's technology, trade secrets, know-how, and business plan. . .

Compl. ¶¶ 64-65.

Plaintiff does not allege that Defendants are passing off their products as products manufactured or designed by Stolle. Nor does Plaintiff allege that Defendants have made any other false statements designed to harm Stolle. Rather, the essence of Plaintiff's claim appears to be that Defendants used information gathered during the course of their employment with Stolle to create very similar product lines which Defendants are now selling to Plaintiff's customers. While these allegations may give rise to other tort claims, they are insufficient to state a claim for unfair competition.[4] See Landskroner v.

---

[4] In addition, to the extent Plaintiff's claim of unfair competition is based on the same factual allegations as the claim of misappropriation of trade secrets, it would appear that this claim is preempted by the Ohio Uniform Trade Secrets Act. See Ohio Revised Code § 1333.67(A).

- 29 -

Landskroner, 154 Ohio App. 3d 471, 491, 797 N.E.2d 1002, 1017-18 (Ohio Ct.

App. 2003).  Accordingly, Defendants' motion to dismiss Count VII of Plaintiff's

Complaint (unfair competition) is SUSTAINED.

### 4.    Intracorporate Conspiracy Doctrine

Count III of Plaintiff's Complaint asserts a claim of conspiracy to

misappropriate trade secrets.  The subheading indicates that this claim is brought

only against "Shu An and SLAC."  Defendants therefore argue that the

intracorporate conspiracy doctrine forecloses this claim.  A conspiracy requires a

minimum of two persons.  A corporation cannot conspire with its own agents or

employees because the acts of a corporate agent are deemed to be the acts of the

corporation itself.  Doherty v. American Motors Corp., 728 F.2d 334, 339 (6th Cir.

1984).

The subheading for this claim is completely inconsistent with the factual

allegations supporting it.  Plaintiff clearly alleges that An, SLAC, Fultz and RAM

were all involved in the conspiracy.  For example, Plaintiff alleges that "RAM and

Fultz, in concert with Shu An and SLAC, have conspired to consolidate the trade

secrets. . . " Compl. ¶ 62.  Likewise, paragraph 94 of the Complaint reads,

"[t]ogether with Ken Fultz and RAM, Shu An and SLAC are making use of Stolle's

misappropriated trade secrets and proprietary information in order to unfairly

compete with Stolle, thereby causing Stolle irreparable harm."  Paragraph 95

alleges that, "[w]orking in concert, Ken Fultz, RAM, Shu An and SLAC constitute a

- 30 -

malicious combination who have caused and are continuing to cause injury and actual damage to Stolle."

Because Plaintiff has clearly alleged a conspiracy involving more than An and SLAC, the intracorporate conspiracy doctrine does not bar Plaintiff's claim. Accordingly, Defendants' motion to dismiss Count III of Plaintiff's Complaint (conspiracy to misappropriate trade secrets) is OVERRULED.

### 5. Injunctive Relief

Finally, Defendants argue that because Plaintiff has failed to state any claim upon which relief can be granted, the Court must dismiss the claim for injunctive relief set forth in Count X of the Complaint. Because several of the claims survive the motion to dismiss, the Court OVERRULES this argument as well.

### IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss, Doc. #14, is SUSTAINED IN PART and OVERRULED IN PART. Defendants' Motion to Dismiss for lack of personal jurisdiction is OVERRULED. Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted is SUSTAINED as to Counts VII (unfair competition) and IX (conversion), and OVERRULED as to all other counts.


Counsel of record will take note that a telephone conference call will be convened by the Court, beginning at 9:00 a.m. on Tuesday, December 27,

2011, for the purposes of setting a trial date and other dates leading to a resolution of this litigation.  Counsel must confer and submit an amended Case Management/ Rule 26F Report no later than the close of business on Friday, December 23, 2011.


Date:  December 14, 2011

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:  Counsel of Record